**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **TASHA BONNER**, |
| Plaintiff, |
| v. |
| **S-FER INTERNATIONAL, INC.**, |
| Defendant. |

Case No. 1:16-cv-00531 (CRC)

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tasha Bonner had a shopping experience that she likens to that depicted in a well-known scene of the 1990 box-office hit *Pretty Woman*. Excerpting portions of the script in her multi-count Complaint, Bonner alleges that, like Julia Roberts' character Vivian, she was treated rudely in a high-end boutique, Salvatore Ferragamo, on the basis of her appearance. Defendant, the boutique's operator, now moves to dismiss all but one of Bonner's claims.

**I.   Background**

Bonner, an African-American woman, alleges that she visited Salvatore Ferragamo's H Street store in downtown Washington, D.C., on a Tuesday morning in September 2015, "smartly dressed." Am. Compl. ¶¶ 1, 4, 6. After "warmly greet[ing] the two Caucasian employees working in the store," Bonner began to browse the store's merchandise and try on some clothing. Id. ¶¶ 7–9. At that point, she claims, "a store employee flippantly asked her 'if she knew the jacket cost $4,500,'" "rudely asked Bonner if she was going to buy the jacket," and "made a remark which Bonner understood [as meaning] that he would prefer if she allowed [the employee] to physically handle the merchandise." Id. ¶¶ 9–11. When Bonner proceeded to examine the shoe display and requested to see a certain pair, the same "employee responded by immediately demanding that she leave the store," causing her to feel "embarrassed, threatened,

1

and demeaned" and to protest the manner of her treatment. Id. ¶¶ 12–15. The employee then falsely "told Bonner that she was being asked to leave because she needed a membership to shop" at the store. Id. ¶¶ 16–17. Later, after Bonner had begun to record her conversations with the employees with her phone, she was told that "she was being asked to leave because of her 'attitude.'" Id. ¶¶ 17–18. One employee then called the police while the other employee locked the door—"Bonner's only available exit from the store"—and told her she could not leave. Id. ¶ 19. Bonner was "trapped" in the store for "several minutes" before she was permitted to leave. Id. ¶ 21.

Bonner filed a Complaint in the Superior Court of the District of Columbia in December 2015 against the boutique's operator, S-Fer International, Inc., d/b/a Salvatore Ferragamo ("Ferragamo"), alleging three state law claims: violation of the D.C. Human Rights Act of 1977 ("DCHRA"), D.C. Code § 2-1401, et seq. (Count I); false imprisonment at common law (Count II); and intentional infliction of emotional distress ("IIED") at common law (Count III). Ferragamo moved to dismiss Counts I and III for failure to state a claim. After that motion became ripe, Ferragamo removed the action to this Court, asserting diversity jurisdiction.[1] Following removal, Bonner filed an Amended Complaint with an additional count, asserting a violation of the federal statute 42 U.S.C. § 1981 (Count IV), which prohibits discrimination in the formation and enforcement of contracts. Ferragamo then moved to dismiss that count as

---

[1] The parties' citizenship is diverse: Bonner is a citizen of the District of Columbia, and Defendant is a New York corporation with a principal place of business in New York. Notice of Removal ¶ 16. Although Bonner did not specify a damages amount in either of her complaints, her counsel stated at the hearing on Defendant's motion that Bonner sought a recovery in excess of $75,000. Defendant averred the same in its Notice of Removal, id. ¶ 15, an assertion which "should be accepted when not contested by the plaintiff or questioned by the court." Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 553 (2014).

well. On September 8, 2016, the Court held a hearing on the dismissal motions, which taken together challenge three of Bonner's four claims.

## II.   Legal Standard

A valid complaint must contain "a short and plain statement of the [relevant] claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. "To survive a motion to dismiss, [the] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In reviewing a dismissal motion, the Court "accept[s] as true all of the allegations contained in [the] complaint," disregarding "[t]hreadbare recitals of the elements of a cause of action" and "mere conclusory statements." Iqbal, 556 U.S. at 678. Then, the Court examines the remaining "factual content [to determine if it may] draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. That liability must be "plausible"—more than just "possib[le]," even if less than "probab[le]." Id. at 678–79.

## III.   Analysis

### A.   Counts Alleging Racial Discrimination

Bonner brings two claims asserting that Ferragamo unlawfully denied her service on the basis of race. First, she alleges that "she was denied service and was told to leave [Ferragamo's] store due to her race, color, or personal appearance," in violation of the DCHRA, D.C. Code § 2-1401, et seq. Am. Compl. ¶ 26, which makes it unlawful to "deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and

accommodations of any place of public accommodations" either "wholly or partially" on the basis of, *inter alia*, "race, color, [or] personal appearance." Id. § 2-1402.31(a)(1).

Bonner makes a similar claim of racial discrimination under federal law, alleging that Ferragamo violated 42 U.S.C. § 1981 by "depriv[ing her] of her right to make and enforce contracts on the same terms as enjoyed by white persons . . . in that she was asked to leave the store and falsely imprisoned on the basis of her race." Am. Compl. ¶ 39. Although "[§] 1981 claims most commonly involve contracts of employment," the provision "also prohibits refusal of service based on race." Mitchell v. DCX, Inc., 274 F. Supp. 2d 33, 44 (D.D.C. 2003). "To establish a claim under § 1981, a plaintiff must show that (1) [he or she is a member] of a racial minority [group]; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." Id. at 44–45.

Ferragamo argues Bonner has failed to state claims under the DCHRA or § 1981 because she has failed to allege facts sufficient to make it plausible that "she was denied the opportunity to shop at Salvatore Ferragamo on the basis of her race[.]" Mot. Dismiss Counts I & III ("First Mot. Dismiss") 5; see also Mot. Dismiss Count IV ("Second Mot. Dismiss") 6. Indeed, says Ferragamo, the facts alleged in Bonner's Complaint suggest alternative explanations for the refusal of service—namely, the employees' statements that Bonner needed a "membership" and was being asked to leave due to her "attitude." Am. Compl. ¶¶ 16, 18. Furthermore, Bonner's allegation that the two Ferragamo employees were "Caucasian," being mere "demographic information," is insufficient to found an inference of racially discriminatory intent. First Mot. Dismiss 5 (citing Boykin v. Gray, 895 F. Supp. 2d 199, 208 (D.D.C. 2012)).

These arguments are unpersuasive. As an initial matter, Bonner alleged far more than the facts of her own race, the race of the employees at the store, and their refusal of service. She

4

also alleged: that she was "smartly" dressed; that she "warmly greeted" the employees; that shortly after she began browsing the merchandise one of the employees "flippantly" asked her if she was aware of an item's high price tag and then "rudely" asked her if she was prepared to make a purchase; and that an employee "demand[ed]" that she leave the store in response to her request to see a display shoe. Am. Compl. ¶¶ 1, 7–14. In the context of these facts, accepted as true, a "reasonable inference" to be drawn regarding the supposed alternative explanations for her dismissal, Iqbal, 556 U.S. at 663, is that those reasons were pretextual. If it was indeed made, the statement regarding a purported "membership" requirement for shoppers was false; and the statement regarding Bonner's "attitude" as a basis for her removal was made much later in the alleged sequence of events, after she had allegedly been poorly treated in numerous ways by the Ferragamo employees. As Plaintiff argues, the employees' "phony reasons" and "changing rationale" for dismissing her may themselves be evidence of discriminatory intent. Pl.'s Opp'n First Mot. Dismiss 3–4; see also Geleta v. Gray, 645 F.3d 408, 413 (D.C. Cir. 2011) ("[S]hifting and inconsistent justifications are 'probative of pretext.'" (quoting EEOC v. Sears Roebuck & Co., 243 F.3d 846, 853 (4th Cir. 2001))).

The parties debate whether this Court should apply a framework developed in Callwood v. Dave & Buster's, Inc., 98 F. Supp. 2d 694, 704–08 (D. Md. 2000), for § 1981 cases in the commercial or retail context. Under those circumstances, Callwood permits plaintiffs to make out a prima facie case of discriminatory intent by showing that

> they did not enjoy the privileges and benefits of the contracted for experience under factual circumstances which rationally support an inference of unlawful discrimination in that (a) they were deprived of services while similarly situated persons outside the protected class were not deprived of those services, and/*or* (b)

>they received services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable.

Callwood, 98 F. Supp. 2d at 707. In other words, Callwood permits plaintiffs to show discrimination without evidence regarding the treatment of similarly situated comparators. See Williams v. Staples, Inc., 372 F.3d 662, 668 n.5 (4th Cir. 2004) ("Callwood purports to provide an alternative analytical approach in public accommodation discrimination cases in which there is scant evidence as to how members of the protected class are treated differently from members outside the class."). Callwood has been evaluated favorably and adopted in this District, see Banks v. Bank of Am., N.A., 505 F. Supp. 2d 159, 167 (D.D.C. 2007),[2] and by at least one federal appellate court, see Christian v. Wal-Mart Stores, Inc., 252 F.3d 862, 872 (6th Cir. 2001).[3]

The Court likewise concludes that Callwood's formulation—or one like it—is sensible for the purposes of Section 1981 claims in the commercial context. As illustrated by this very case, customers may not always have available to them the type of comparator data that is available in the employment context, since their claims will often arise from limited, one-off interactions with service-industry establishments. Bonner may have been the only customer in

---

[2] After Banks, one case in this District noted as significant that the plaintiff had "asserted that white customers in the store were not subjected to the same treatment." Newman v. Borders, Inc., 530 F. Supp. 2d 346, 349 (D.D.C. 2008). However, while comparative evidence was noted as helpful circumstantial evidence establishing discriminatory intent in Newman, the court nowhere stated that such comparative evidence was *necessary* to the claim in the commercial context. In other words, the comparative evidence question was simply not reached, being unnecessary to the holding.

[3] Other appellate courts, including the Fourth, have considered the test but found an evaluation of its merits to be unnecessary. See Odunukwe v. Bank of Am., 335 F. App'x 58, 61 (1st Cir. 2009) (no error where jury instruction did not reflect Callwood test); Fahim v. Marriott Hotel Servs., Inc., 551 F.3d 344, 350 n.2 (5th Cir. 2008) (declining to decide merits of the Callwood formulation because the issue was not briefed below or on appeal); Williams, 372 F.3d at 668 n.5 (deeming Callwood inapplicable because there was "adequate comparative evidence" in the case at bar); Lizardo v. Denny's, Inc., 270 F.3d 94, 102 (2d Cir. 2001) (concluding that even assuming the validity of Callwood, "the cited instances of hostility [in the instant case], considered in context, did little to support an inference of discriminatory intent").

6

the store that morning, making Ferragamo's treatment of other customers beyond the scope of her observation. That matter of happenstance should not require dismissing a claim that otherwise rests on facts supporting a plausible inference of racial discrimination.

In short, the facts alleged comfortably support a plausible claim that Bonner was denied service at Ferragamo's store due to her race. Accordingly, Defendant's motion to dismiss Bonner's claims under the DCHRA and § 1981 will be denied.

B. Count Alleging Intentional Infliction of Emotional Distress

Bonner also brings a common law claim for IIED, asserting that Ferragamo's employees "engaged in extreme and outrageous conduct by [intentionally or recklessly] refusing to allow Bonner to shop in the store due to her race, color, or personal appearance" and by "locking Bonner inside the store," causing her "severe emotional distress." Am. Compl. ¶ 34–35. "The tort of intentional infliction of emotional distress consists of (1) 'extreme and outrageous' conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff 'severe emotional distress.'" Kotsch v. D.C., 924 A.2d 1040, 1045 (D.C. 2007).

Defendant asserts that the IIED claim is deficient in two primary respects: first, that Bonner has "failed to sufficiently plead 'extreme and outrageous' conduct on the part of Salvatore Ferragamo"; and second, that she has "failed to sufficiently plead that Salvatore Ferragamo . . . caused [her] severe emotional distress." First Mot. Dismiss 6, 8.

The standard for "extreme and outrageous conduct" is exceptionally demanding. "Conduct is considered 'extreme and outrageous' when it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Langer v. George Washington Univ., 498 F. Supp. 2d 196, 200 (D.D.C. 2007) (quoting Bernstein v. Fernandez, 649 A.2d 1064,

1075 (D.C. 1991)). "'[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' are not sufficient." Langer, 498 F. Supp. 2d at 200 (quoting Waldon v. Covington, 415 A.2d 1070, 1076 (D.C. 1980)). Furthermore, although "[r]acial discrimination can amount to extreme or outrageous conduct," Park v. Hyatt Corp., 436 F. Supp. 2d 60, 65 (D.D.C. 2006), that is typically only the case where there is a "pattern of harassment," as opposed to "a few isolated incidents," Paul v. Howard Univ., 754 A.2d 297, 308 (D.C. 2000).

The facts alleged here, taken as true, certainly constitute behavior that is "insult[ing]," and which led Bonner to experience "indignities." Langer, 498 F. Supp. 2d at 200. But, as a legal matter, this is not the sort of "extreme" and "outrageous" conduct covered by the IIED tort. Furthermore, Bonner does not allege a "pattern" of discriminatory harassment on the part of Ferragamo, or even "a few isolated incidents," but rather a single discriminatory episode. Paul, 754 A.2d at 308. One incident of racial discrimination, at least the incident alleged here, generally does not rise to the "extreme" standard of conduct for which a defendant may be liable for IIED.

Plaintiff's IIED claim also fails for the separate, but related, reason that the facts she alleges do not constitute "severe emotional distress," which must be "of so acute a nature that harmful physical consequences might be not unlikely to result." Daniels v. D.C., 894 F. Supp. 2d 61, 68 (D.D.C. 2012) (quoting Sere v. Group Hospitalization, Inc., 443 A.2d 33, 37 (D.C. 1982)). "[M]ental distress" is not enough, Crowley v. N. Am. Telecommunications Ass'n, 691

A.2d 1169, 1172 (D.C. 1997), and without more, neither is "[f]eeling embarrassed, threatened, and demeaned," as Bonner has alleged here, Am. Compl. ¶ 15.

Accordingly, the Court will grant Defendant's motion to dismiss Bonner's IIED claim.

### IV.     Conclusion and Order

For the above reasons, it is hereby

**ORDERED** that [7] Defendant's Motion to Dismiss Counts I & III shall be **GRANTED** with respect to Count III and **DENIED** with respect to Count I.  It is further

**ORDERED** that [13] Defendant's Motion to Dismiss Count IV shall be **DENIED**.

**SO ORDERED.**

CHRISTOPHER R. COOPER
United States District Judge

Date: September 14, 2016